IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

*FILED*

*NOV 6 2014*

*U.S. DISTRICT COURT-WVND*
*CLARKSBURG, WV 26301*

SALLY R. METZ,

      **Plaintiff,**

v.
                      **Civil Action No. 2:14CV56**
                      **(The Honorable John Preston Bailey)**

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

      Sally R. Metz ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant" and sometimes "Commissioner") denying her claims for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and Widow's Insurance Benefits ("WIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on cross motions for summary judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Civ. P. 9.02.

## I. Procedural History

      Plaintiff filed applications for SSI, DIB, and WIB on September 20, 2011, alleging disability since August 1, 2011, due to anxiety, depression, hypertension, and a glucose impairment[1] (R. 218-

---

[1] The ALJ found that Plaintiff suffered solely from mental impairments. In her brief, Plaintiff only focuses on medical evidence of mental impairments. Accordingly, the undersigned has only included evidence regarding mental impairments in the statement of facts.

38, 258). The state agency denied Plaintiff's application initially and on reconsideration (R. 109-34, 142-62). Plaintiff requested a hearing, which Administrative Law Judge Terrence Hugar ("ALJ") held on February 28, 2013, in Morgantown, West Virginia, and at which Plaintiff, represented by counsel, Brian Bailey, and Linda Dezack, a vocational expert ("VE"), testified (R. 318-358). On March 19, 2013, the ALJ entered a decision finding Plaintiff was not disabled (R. 25-42, 51-68). Plaintiff filed a timely appeal of the ALJ's decision to the Appeals Council, and, on June 11, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 1-19).

## II. Statement of Facts

Plaintiff was born on May 27, 1953, making her fifty-nine (59) years old at the time of the administrative hearing in the instant case. Plaintiff completed high school and has past relevant work as an adult care provider (R. 259).

Plaintiff presented to Dr. Orvik on August 15, 2011, with complaints of chest pain. Plaintiff's husband had died the previous week; she had "also lost her brother in law" (R. 332, 395). Plaintiff reported she was rearing her two (2) grandchildren and cared for a "dependent person through the DHHR." Dr. Orvik's examination was normal (R. 333-34, 396-97). Dr. Orvik prescribed Viibrid (R. 334, 397).

Dr. Orvik treated Plaintiff for anxiety neurosis, trace valvular disease, and unspecified hypertension on August 30, 2011. Plaintiff reported she was "having a lot of anxiety" relative to the death of her husband. Plaintiff stated antidepressants "helped her somewhat" (R. 329, 392). Plaintiff was rearing her two (2) grandchildren and she cared for a "dependent person through the DHHR." She was depressed and had difficulty sleeping. Upon examination, Dr. Orvik found Plaintiff was

oriented as to person, place, and time; in no acute distress; "much less anxious"; and doing "much better than last visit." Her examination was normal (R. 330-31, 393-94).

Plaintiff presented to Dr. Orvik on September 28, 2011, with complaints of anxiety. She stated Paxil caused her to have a headache. She was positive for anxiety, depression, and sleep disturbances. She was "shaking somewhat." Dr. Orvik diagnosed hypertension, depression, and anxiety disorder. He prescribed Metoprolol Tartrate, Hydroxyzine, and Viibryd (R. 389-91).

Robert J. Klein, Ed.D., a psychologist with Family and Marital Counseling Center, completed an Initial Intake form of Plaintiff on October 12, 2011. Plaintiff reported her husband of forty-three (43) years had died in August, 2011, and had been bedridden for four (4) years. She was "[i]nto severe grief"; she medicated with Ativan, Vistaril, and Zoloft. Plaintiff reported she had five (5) adult children; had adopted one (1) granddaughter; and had been caring for one (1) grandson. She had no criminal history, no alcohol abuse history, and no mental health services provided (R. 361).

Plaintiff reported sleep difficulties, worry, anxiety, depression, anger, feelings of abandonment, fatigue, crying, poor appetite, irritability, and panic attacks. Plaintiff stated she did not want to leave the room in her home where she had "spent her life caring for her husband"; he had "died in her arms." She felt shame and guilt about "not getting it over as soon as others say she should" (R. 361). Mr. Klein diagnosed major depressive disorder, severe and recurrent. Her GAF was sixty (60). Mr. Klein's mental status examination of Plaintiff showed she was cooperative, had good hygiene, and had normal posture. Her affect was broad, mood was "severely depressed and grieving," speech was normal, thoughts "racing," insight and judgment were good, attention was good, concentration was "fair to good," immediate memory was normal, and recent memory was moderately deficient. Mr. Klein helped Plaintiff "focus[] on naturalness of grief" (R. 362).

3

Plaintiff presented to Dr. Orvik on October 13, 2011, with complaints of poor sleep and bouts of crying. She was feeling "some better." She medicated with Hydrochlorothiazide, Hydroxyzine, Lorazepam, Metoprolol Tartrate, Sertraline, Ventolin, and Viibryd (R. 386). She was positive for anxiety, depression and sleep disturbances (R. 387). Dr. Orvik prescribed Lexapro (R. 388).

Wilda Posey, M.A., completed a Mental Status Examination of Plaintiff for the West Virginia Disability Determination Service on November 8, 2011. She was dressed and groomed normally. A friend drove her to the evaluation. Plaintiff's income was comprised of $249 per month from DHHR for her grandson and $249 per month in food stamps (R. 353). Plaintiff stated she was filing for Social Security benefits because her "doctor told" her to do so because she was in a "deep depression and it might be a while before [she] [could] get out of it." Plaintiff's panic attacks had worsened. She was "'angry at [her] husband" because he had broken a promise to her; he had "told [her] he would be there to take care of [her] and now he is not." She had cared for her husband for eight (8) years prior to his death. She felt safe in her room; she did not want to see anyone or go anywhere. Plaintiff had been unable to drive because she became nervous. Plaintiff stated she slept two (2) hours per night, with medication. She had no appetite; she had lost weight. She cried daily and had low energy. She reported loss of pleasure, apathy, decreased personal hygiene, and decreased completion of tasks at home. Plaintiff stated she had been a victim of physical abuse by her husband for twenty-five (25) years of their marriage; her husband had stopped abusing her thirteen (13) years earlier. Plaintiff reported she felt guilt about her husband's death (R. 354).

Ms. Posey reviewed Dr. Orvik's August 15 and 30, 2011, treatment records (R. 354). Plaintiff stated she medicated with aspirin, Hydrochlorothiazide, Ventolin inhaler, Vistaril, Nexium, Lorazepam, Belladona Phenobarbital, Lexapro, Metoprolol Tartrate, and Nitroglycerin. Plaintiff had

a ninth grade education, attended normal classes while in school, and completed her GED when she was forty-six (46) years old. Her past employment included adult care provider for the DHHR and cashier. She reported she related well to coworkers and supervisors. Plaintiff had five (5) children; she was rearing two (2) of her grandchildren; she had reared one (1) grandchild (R. 355).

Upon examination, Ms. Posey found Plaintiff was cooperative; her eye contact was normal; she cried throughout the interview; her speech was normal; she was oriented; her mood "appeared to be dysphoric and anxious"; her affect was labile; her thought process "appeared to be circumstantial"; her thought content was focused on the death of her husband; her insight was fair; her judgment was normal; her immediate memory was mildly deficient; her recent memory was severely deficient; her remote memory was mildly deficient; her concentration was moderately deficient; her psychomotor activity was increased. Ms. Posey diagnosed major depressive disorder, single episode and severe, and generalized anxiety disorder. Ms. Posey's diagnostic rationale was based on Plaintiff's experiencing shortness of breath, stiff body, coughing, shaking, a feeling of "passing out," chest pain, worry, loss of pleasure, guilt, anger, decreased energy, no appetite, daily crying, and physical abuse by her husband (R. 356). During the interview, Ms. Posey observed Plaintiff's hand was trembling and her leg was shaking. Ms. Posey found Plaintiff's prognosis was "guarded" (R. 357).

Plaintiff listed the following activities of daily living: rose at 6:00 a.m., helped her grandson get ready to go to school, lay down, showered "every two to three days," sent her granddaughter to the market, and spent "most of her time in the bedroom lying on the bed." Her granddaughter cleaned, cooked and washed clothes. She interacted daily with her grandson and granddaughter; she saw her therapist once weekly; she was treated by her primary care physician once every three (3)

months. Ms. Posey found Plaintiff's pace was normal; she could manage funds (R. 357).

Mr. Klein wrote a "DDS Response" on November 15, 2011, that read Plaintiff had three (3) "additional therapy sessions on 10/24, 11/2 and 11/14/11," in addition to the initial intake on October 12, 2011. He noted Plaintiff had been diagnosed with major depressive disorder, recurrent and severe, and "Complicated Bereavement" and generalized anxiety disorder had been added to the diagnoses. "Minimal progress [had] been made" (R. 363). Mr. Klein noted Plaintiff's ability to do work-related activities was within normal limits; she had no limitations as to her activities of daily living (R. 364). Mr. Klein found Plaintiff was oriented. Her speech was normal. Her mood was depressed and affect was restricted. She had normal perception, thought content, insight, judgment, and psychomotor behavior. Her immediate and remote memories were normal. Her recent memory was mildly deficient. Mr. Klein found Plaintiff was mildly deficient in social functioning, concentration, task persistence, and pace. Plaintiff could manage funds (R. 365).

Debra Lilly, Ph.D., completed a Psychiatric Review Technique of Plaintiff on November 19, 2011 (R. 367). Plaintiff's affective disorders were major depressive disorder and bereavement (R. 370). Plaintiff's anxiety-related disorder was generalized anxiety (R. 372). Ms. Lilly found Plaintiff had mild restrictions in activities of daily living, social functioning, concentration, persistence, and pace and had experienced no episodes of decompensation (R. 377). When making her findings, Ms. Lilly reviewed Plaintiff's record, including Ms. Posey's mental status examination results (R. 379).

Mr. Klein corresponded with Dr. Orvik on December 6, 2011, relative to increasing Plaintiff's dosages of Ativan and Lexapro. Plaintiff experienced increased tremors in her upper body, legs, and thighs. She had increased crying episodes. She had been rejected for Social Security benefits and had experienced a "major panic attack" (R. 382).

Plaintiff presented to Dr. Orvik on December 7, 2011, for medication management. She

medicated with Donnatal, Hydrooxyzine, Lexapro, Lorazepam, Metoprolol Tartrate, and Ventolin (R. 383). She was positive for anxiety, depression, and sleep disturbances. She was in no acute distress (R. 384). Dr. Orvik increased Plaintiff's dosages of Ativan and Lexapro (R. 385).

Mr. Klein completed a Psychological Evaluation of Plaintiff on December 20, 2011. Plaintiff reported "high anxiety" and "severe depression." Mr. Klein found the "level of [Plaintiff's] intellect was debilitating to her in understanding and planning for any options." Mr. Klein noted Plaintiff had presented with body tremors when she first met with him on November 12, 2011, and speculated that it was "possible . . . that they were signs of a conversion disorder" because she did not have tremors prior to her husband's death (R. 405). Plaintiff was driven to the evaluation by her granddaughter. She reported she "quit school in 9th grade, and reported earning a High School Diploma in 1946 (sic)." Plaintiff did not have suicidal thoughts, and she had lost interest in "almost everything." She was "'down, depressed, crying a lot, and anxious.'" Plaintiff reported she woke at 6:30 a.m. and retired at 9:00 p.m. Her sleep was "restless." She did not drive a lot "due to her hand and leg tremors." Plaintiff reported she took "care of all household chores" (R. 406).

Mr. Klein found, based on his mental examination of Plaintiff, that her hygiene was appropriate, her eye contact was good, her speech was normal, she was sociable and had a sense of humor, she was oriented times four (4), her mood was dysphoric and anxious, her affect was restricted, her immediate memory was normal, her recent memory was moderately deficient, and her remote memory was normal. Plaintiff's thought process "suggested flight of ideas." Her thought content "suggested problems." Plaintiff's insight "into the nature of her condition suggested poor insight." Plaintiff's comprehension "appeared to be moderately deficient." Her concentration was mildly deficient. Her pace "varied." Plaintiff's persistence and psychomotor behavior were within

normal limits (R. 406). On the WRAT-4, Plaintiff's scores were as follows: word reading - 11.8th grade; sentence comprehension - 12.5th grade; spelling - 7.7th grade; and math computation - 5.4th grade. Plaintiff's scores on the WAIS-IV were as follows: verbal comprehension - 80th percentile; perceptual reasoning - 77th percentile; work memory - 77th percentile; processing speed - 79th percentile; and full scale IQ - 74th percentile. Mr. Klein found Plaintiff's full scale IQ of seventy-four (74) was in the borderline range of intelligence. Plaintiff scored fifty-three (53) on the BDI-II, which indicted severe depression (R. 407). Plaintiff's score of twenty-eight (28) on the BAI indicted severe anxiety. Plaintiff's scores on the BPRS indicated Plaintiff was positive for somatic concerns, anxiety, tension, depressive mood, and excitement. Plaintiff's responses on the MMPI-2RF were "emotional/internalizing and thought dysfunction, demoralization, high dysfunctional negative emotions, disaffiliativeness, social avoidance, cynicism, malaise, gastrointestinal complaints, neurological and cognitive complaints, helplessness, self-doubt, inefficacy, stress, anxiety, behavior-restricting fears and introversion." Mr. Klein diagnosed major depressive disorder, recurrent and severe without psychosis; generalized anxiety disorder; conversion disorder; and borderline intellectual functioning. Mr. Klein found Plaintiff's GAF was forty-five (45) and she was severely impaired "in [o]ccupational, [i]nterpersonal, and [a]daptive [s]ocial [f]unctioning" (R. 408).

Holly Cloonan, Ph.D., reviewed all the evidence in the file and affirmed the November 19, 2011, Psychiatric Review Technique of Plaintiff completed by Debra Lilly, Ph.D. (R. 410).

Plaintiff presented to Dr. Orvik on June 5, 2012, with arm pain, hoarseness, swollen neck, and middle/lower back pain. Plaintiff reported she was "gradually starting to feel a little better since her husbands (sic) death, although she [was] still having trouble with depression." Dr. Orvik noted Plaintiff medicated with Colestipol HCI, Dexilant, Hydrochlorothiazide, Lexapro, Lorazepam,

Metoprolol Succinate, and Ventolin (R. 497). Except for being positive for anxiety, depression, and sleep disturbances, Plaintiff's examination was normal (R. 498). Dr. Orvik diagnosed hypertension, depression, and anxiety disorder (R. 499).

Plaintiff presented to Dr. Orvik on July 12, 2012, for a "DHS Physical." Plaintiff reported she was "less depressed" (R. 495).

Phaedra Caruso-Radin, Psy.D., completed a Mental Residual Functional Capacity Assessment of Plaintiff on July 24, 2012. In the "understanding and memory" category, Ms. Caruso-Radin found Plaintiff was not significantly limited in her ability to remember locations and work-like procedures and ability to understand and remember very short and simple instructions. Plaintiff was moderately limited in her ability to understand and remember detailed instructions (R. 412). In the "sustained concentration and persistence" category, Ms. Caruso-Radin found Plaintiff was not significantly limited in her abilities to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, and make simple work-related decisions; she was moderately limited in her abilities to carry out detained instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (R. 412-13). In the "social interaction" category, Ms. Caruso-Radin found Plaintiff was not significantly limited in her abilities to ask simple questions or request assistance, accept instruction and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate

behavior, and adhere to basic standards of neatness and cleanliness; she was moderately limited in her ability to interact appropriately with the general public. Ms. Caruso-Radin found Plaintiff was not significantly limited in any sub-categories of the "adaption" category (R. 513). Ms. Caruso-Radin found Plaintiff was able to understand, remember, and carry-out two-step commands involving simple instructions and maintain concentration, pace, and persistence. Plaintiff "might" have difficulty sustaining attention for long periods; however, according to Ms. Caruso-Radin, Plaintiff could sustain concentration, persistence, and pace "up to 4 hr increments with customary work breaks" (R. 414).

Also on July 24, 2012, Ms. Caruso-Radin completed a Psychiatric Review Technique of Plaintiff (R. 416). Her affective disorder was major depressive disorder (R. 418-19). Her anxiety-related disorder was generalized anxiety disorder (R. 419-20). Ms. Caruso-Radin found Plaintiff had mild restrictions of daily living; moderate restrictions in social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. She had experienced no episodes of decompensation (R. 424). Ms. Caruso-Radin found the following:

> The [Plaintiff's] husband passed 8/23/11. He had been physically abusive and extremely controlling to her for the first 25 yrs of their marriage, 13 yrs ago he stopped being physically abusive, then she spent 8 yrs nursing him (COPD and cancer), hardly leaving the house unless someone was with him. Now, since his death she feels anxious when she leaves the house and feels she is being punished. The MER reveals MDD and anxiety, although it is unclear why no one has fully assessed for PTSD. While he might have ceased physically abusing her, it appears he continued to be emotionally abusive and controlling. Her guilt and anxiety is likely a result of this abuse. It is clear that she is grieving as well, complicated by the confilcted emotions she is experiencing (not that testing reveals she is anxious, tense and excited) and she reports being quite angry with him for dying. This said, she continues to raise 2 children (one is 18 but still living at home, and the other is 11). She does household chores and takes care of adls, including hygiene. While she reports anxiety prior to husband's death the MER does not reveal it to be incapaciting. Research reveals that bereavement sxs resolve over time (husbands (sic) death was only 8/11), and she is in treatment which will hopefully address the

grief as well as other underlying issues. As you stated, she is certainly not nonsevere, but the objective evidence reveals she can understand, remember, and carry out a two-step command involving simple instructions and maintain CPP for such in an LPC/NPC environment (R. 426, 429-30).

Ms. Caruso-Radin reviewed Mr. Klein's records of his therapy sessions with Plaintiff in making her determinations. She found Plaintiff was credible (R. 428, 429).

Plaintiff presented to Dr. Orvik on October 9, 2012, with complaints of depression and crying. Her heart rate was slow and she had chest pain. Plaintiff medicated with Hydrochlorothiazide, Hydroxyzine, Keflex, Lorazepam, Metoprolol Succinate, Paroxetine, and Ventolin (R. 488). Except for being positive for anxiety and depression, Plaintiff's examination was normal (R. 489-90).

Tony Goudy, Ph.D., completed a psychological evaluation of Plaintiff on February 8, 2013. Plaintiff stated she had chronic depression and frequent panic attacks (R. 503). Her symptoms included anhedonia, varied appetite, poor sleep, low energy, feelings of guilt and worthlessness, "problematic" concentration, suicidal ideations, and auditory and visual hallucinations (R. 503-04).

Mr. Goudy reviewed Mr. Klein's December, 2011, psychological evaluation of Plaintiff; Dr. Orvik's treatment notes; and Ms. Posey's November, 2011, psychological evaluation (R. 504). Plaintiff reported she participated in weekly psychotherapy with Mr. Klein. Plaintiff reported she married her husband when she was fifteen (15). She showed Mr. Goudy "a large framed picture of her deceased husband which she carrie[d] around in her purse and began sobbing. It took approximately 10 min. for her to compose herself before the clinical interview could continue" (R. 505).

Upon examination, Mr. Goudy found Plaintiff exhibited good hygiene and personal care; had "significant" psychomotor activity in the form of hand tremors and body shaking; described her

mood as "'anxious'"; had restricted affect; sobbed when discussing deceased husband; had relevant and coherent speech; had suicidal ideations with no intent or plan; and had auditory and visual hallucinations (R. 506). Plaintiff was oriented to time, place, person, and circumstance; her immediate memory was intact; her recent memory was moderately impaired; her remote memory was mildly impaired; her concentration was markedly impaired; she functioned in the borderline range of intellect; her judgment was intact. Plaintiff scored a fifty-two (52) on the BDI - II, which indicted severe depression. Her score of forty-eight (48) on the BAI indicated severe anxiety (R. 507). Plaintiff's score on the M-FAST indicted she was not "feigning" her symptoms of hallucinations (R. 507-08).

Mr. Goudy diagnosed major depressive disorder, recurrent, severe, with psychotic features; panic disorder without agoraphobia; bereavement; borderline intellectual functioning; and a GAF of 45-50 (R. 508). Mr. Goudy recommended Plaintiff be assessed under 12.04 - Affective Disorders and 12.06 - Anxiety-Related Disorders (R. 508-09). Mr. Goudy found Plaintiff was positive for the following B Criteria: mild impairment in activities of daily living, moderate impairment in social functioning, marked impairment in concentration, persistence, and pace. Mr. Goudy opined Plaintiff did not meet a listing under the B Criteria; however, he noted that Plaintiff's "emotional condition is so tenuous at this point that a return to work and the stress that may elicit would likely cause her to decompensate or deteriorate significantly. Consequently, it [was] believed that she would meet the criteria under 12.04C" (R. 509).

Mr. Klein submitted a document to Plaintiff's disability attorney on February 18, 2013, wherein he confirmed that Plaintiff had been in counseling with him since October 12, 2011, and had participated in forty-six (46) sessions. He wrote that Plaintiff had originally been diagnosed

with bereavement, which was "changed to Major Depressive Disorder," severe without psychotic features, generalized anxiety disorder, and conversion disorder. Plaintiff experienced tremors, which increased in December, 2011. Mr. Klein wrote Plaintiff was positive for both auditory and visual hallucinations; her mood was agitated and depressed; her affect was labile; her thought process was "loosening associations, racing thoughts, thought blocking"; her thought content contained delusions, preoccupations, and obsessions; and her insight was faulty in that she did not "accurately perceive nature of her problem" (R. 510).

Administrative Hearing

Plaintiff testified at the February 28, 2013, administrative hearing that her husband abused her physically and mentally during their marriage. When he became ill, she was with him "every minute of the day, unless [she] had to do something for him" (R. 80). Plaintiff felt she "needed" to be with her husband at all times during his illness. When she left the house to go to a doctor's appointment or the market, she would "come straight back." When Plaintiff's husband died, Plaintiff felt "scared" and "lonesome." Plaintiff continued to stay in the bedroom she shared with her husband because she thought her husband was there. Plaintiff did very little housework because she could not "focus on anything." Plaintiff could not remember to shower and she could not remember how long it had been since she had showered (R. 81). Plaintiff had difficulty remembering to do or finish laundry. Plaintiff no longer read because she would forget what she had read and would "have to go back over it and read it again.' Plaintiff carried a picture of her husband with her because it made her feel as if he were "close" to her (R. 82). When Plaintiff encountered "a lot of people," she would experience shortness of breath and shake. She would remove herself from the situation. Plaintiff cried "all the time." Plaintiff stated her five (5) children

had not "called [her] or anything since [her husband] died." Plaintiff heard her husband's voice "sometimes." Plaintiff testified she was a "very outgoing" person prior to the death of her husband (R. 86). She participated in no activities after his death (R. 87).

Plaintiff testified she participated in counseling once weekly. Her physician told her her tremors could be a "side effect of the medicine" (R. 88). Plaintiff reported she drove once or twice per week. She drove to the graveyard to visit her husband's grave (R. 89).

The ALJ asked the VE the following hypothetical question:

. . . [A]ssume this individual is limited to simple, routine, and repetitive tasks; not able to perform at a production rate pace, but can perform goal oriented work; must entail no more than occasional interaction with supervisors, coworkers, and no more than occasional interaction with supervisors, coworkers, and no more than incidental contact with the public; also must be with few workplace changes. Now, can the hypothetical individual perform the past job you described as actually performed or as generally performed in the national economy? (R. 95).

The VE replied that such an hypothetical person could not perform Plaintiff's past work but could perform the work of housekeeper, clothes folder, laundry sorter, caretaker, dishwasher, and vehicle washer (R. 95-97).

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, ALJ Hugar made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3.  The prescribed period ends on April 30, 2013.

4.    The claimant has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

5.    The claimant has the following severe impairments: anxiety; depression (20 CFR 404.1520(c) and 416.920(c)).

6.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) must be limited to simple routine and repetitive tasks; not able to perform at a production rate pace, but can perform goal oriented work; must entail no more than occasional interaction with supervisors and coworkers and non more than incidental contact with the public.  With few workplace changes.

8.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

9.    The claimant was born on May 27, 1953 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

10.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

13.   The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)) (R. 25-42, 51-68).

# IV. Discussion

## A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## B. Contentions of the Parties

The Plaintiff contends:

1. Because the ALJ discounted all of the treating and consultative psychological evidence and then relied on a reviewing consultant's report that was based on that same discounted evidence then this Court should find that the ALJ's decision is not based on substantial evidence and must be remanded for the calculation of benefits; and

2. Because the ALJ mischaracterized evidence, relied on a report that was based on less than subjective statements of Ms. Metz, acted as his own medical

expert, and improperly discounted Dr. Goudy's report, then this Court must remand this case for the calculation of benefits as the ALJ's position is not supported by substantial evidence.

(Plaintiff's Brief at 4-15.)

The Commissioner contends:

1.     The ALJ correctly weighed the opinion evidence.

(Defendant's Brief at 6-10.)

## C.     Opinion Evidence

Plaintiff raises two claims for relief; they both challenge the ALJ's treatment of the opinion evidence contained in the record. First, Plaintiff asserts that the ALJ failed to assign weight to the consultative report prepared by Ms. Posey on November 8, 2011. (Plaintiff's Brief at 4.) She also argues that the ALJ erred by only relying on the opinion prepared by reviewing consultant Ms. Caruso-Radin. (Id. at 5-6.) Plaintiff also asserts that the ALJ improperly discounted the reports prepared by treating physician Dr. Klein and consulting examiner Dr. Goudy. (Id. at 7-14.)

20 C.F.R. §§ 404.1527(c) and 416.927(c) state:

*How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion

(1) *Examining relationship.* Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) *Treatment relationship.* Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the

issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

> (I) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the treating source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non treating source.

> (ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.

(3) *Supportability.* The more a medical source presents relevant evidence to support an opinion particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency.* Generally, the more consistent an opinion is with

the record as a whole, the more weight we will give to that opinion.

(5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) *Other factors.* When we consider how much weight to give a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

Likewise, 20 C.F.R. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I) provide:

Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical or psychological consultants, or other program physicians or psychologists, are highly qualified physicians and psychologists who are also experts in Social Security disability evaluations. Therefore, administrative law judges must consider findings of State agency medical or psychological consultants, or other program physicians or psychologists, as opinion evidence except for the ultimate determination about whether you are disabled.

"Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it." Craig v. Chater, 76 F. 3d 585, 589 (4th Cir. 1996). The treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In Craig, however, the Fourth Circuit held:

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In fact, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(d)(2) (emphasis added) both provide,

> [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.
>
> By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.

76 F.3d at 590. Furthermore, "[n]either the opinion of a treating physician nor the determination of another governmental entity are binding on the Secretary." DeLoatch v. Heckler, 715 F.2d 148, 150 n.1 (4th Cir. 1983).

The Fourth Circuit has also noted that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Indeed, "[u]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977). The Administration has discussed the explanation of the weight to be given to a treating source's medical opinion, as follows:

> Paragraph (d)(2) of 20 CFR 404.1527 and 416.927 requires that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s). Therefore:
>
> When the determination or decision:
>
> *is not fully favorable, e.g., is a denial; or
>
> *is fully favorable based in part on a treating source's medical opinion, e.g., when

the adjudicator adopts a treating source's opinion about the individual's remaining ability to function;

the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). "[W]hen a physician offers specific restrictions or limitations . . . the ALJ must provide reasons for accepting or rejecting such opinions." Trimmer v. Astrue, No. 3:10CV639, 2011 WL 4589998, at *4 (E.D. Va. Sept. 27, 2011), aff'd by 2011 WL 4574365 (E.D. VA. Sept. 30, 2011). A logical nexus must exist between the weight accorded to opinion evidence and the record, and the reasons for assigning such weight must be "sufficiently articulated to permit meaningful judicial review." DeLoatch, 715 F.2d at 150.

The undersigned has first considered Plaintiff's contention regarding the report prepared by Ms. Posey on November 8, 2011. The ALJ did mention this report in his Step Three discussion of whether Plaintiff met a Listing. (See R. at 55-58.) He also briefly mentioned it in his Step Four discussion. (R. at 63.) Nevertheless, the ALJ did not follow the requirements of 20 C.F.R. §§ 404.1527(c) and 416.972(c), which state: "Regardless of its source, we will evaluate **every** medical opinion we receive." (emphasis added). As the Fourth Circuit has stated, a court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." Gordon, 725 F.2d at 235. As the Fourth Circuit has explained,

[t]he courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational."

Arnold, 567 F.2d at 259. Here, it is clear from the ALJ's decision that he did not assign any weight to Ms. Posey's opinion. This error alone requires the undersigned to find that the ALJ's decision is not supported by substantial evidence. See, e.g., Bosley v. Astrue, No. 1:11CV168, 2012 WL 3730673, at *28-29 (N.D. W. Va. July 27, 2012), aff'd by 2012 WL 3727077 (N.D. W. Va. Aug. 28, 2012) (Kaull, Mag. J.) (recommending remand for ALJ's failure to assign weight to a consultative examiner's report). Nevertheless, the undersigned has considered the ALJ's discussion of the weight assigned to the other medical opinions included in the record.

 As to the opinion evidence, the ALJ stated:

> The Administrative Law Judge has considered Drs. Klein and Goudy's opinions that the claimant [sic] symptoms and limitations would not allow her to engage in work-related activities, but is unable to give them significant weight in this decision. The treating records available for review by Dr. Klein do not report psychosis, poor concentration, more than mild deficiencies in social functioning or problems leaving the home due to psychological reasons. Further, they indicate that the claimant was progressively getting better (Exhibit 4F). In December 2011, Dr. Klein reported a setback in the claimant's progress to Dr. Orvik due to the claimant's disability denial and her financial concerns. This indicates that the claimant's increased anxiety and depressive symptoms were situational, rather than a significant longitudinal problem (Exhibit 6F).

> The Administrative Law Judge is unable to give Dr. Goudy's opinion significant weight in this decision. Despite a review of the evidence of record, Dr. Goudy based his opinions primarily on the claimant's self-reports, despite inconsistencies in her prior reports to other treating physicians.

> For the foregoing reasons, the Administrative Law Judge does not find the claimant to be entirely credible and does not fully accept her subjective statements concerning her symptoms and limitations. The claimant has medically determinable impairments that could reasonably be expected to cause some of the symptoms described, and the Administrative Law Judge believes that she does experiences [sic] anxiety and depressive symptoms and panic attacks from time to time, but not to the frequency and severity alleged. In view of this determination concerning the claimant's credibility, the Administrative Law Judge does not accept medical findings or opinions that are based solely or primarily on the claimant's subjective complaints.

The Administrative Law Judge gives the opinion of the state agency physical consultant's [sic] significant weight in this decision, as it was consistent with the reports of Dr. Orvik and the objective evidence of record (Exhibit 9F). Likewise, the undersigned finds that July 2012 determination by Phaedra Caruso-Radin, Psy.D., was consistent with the claimant's activities of daily living and her mental status. Although the evaluator did not physically examine the claimant, all the evidence of record was reviewed to make a determination that the claimant had the capacity to understand, remember and carry out a two-step command involving simple instructions and maintain concentration, persistence and pace in an LPC/NPC environment (Exhibit 11F).

The prior state agency mental consultants' determinations that the claimant's mental impairments were "not severe" were not given significant weight in this decision. The objective evidence of record, including the reports of the claimant's treating physicians were not carefully measured and the claimant's subjective complaints were not properly considered (Exhibits 5F and 8F).

(R. at 65-66.)

The undersigned first notes that the ALJ's discussion is internally inconsistent. As noted above, the ALJ discounted Dr. Goudy's opinion because it was based "primarily on the claimant's self-reports, despite inconsistencies in her prior reports to other treating physicians." (R. at 65.) The ALJ also stated that he was not accepting "medical findings or opinions that are based solely or primarily on the claimant's subjective complaints." (Id.) However, the ALJ later stated that he could not give "significant weight" to the "prior state agency mental consultants' determinations that the claimant's mental impairments were 'not severe'" because the "claimant's subjective complaints were not properly considered." (Id. at 66.) Given this, the undersigned agrees with Plaintiff that the ALJ has not provided a "consistent review of the evidence." Furthermore, the ALJ only referred to both Dr. Goudy's opinion and the opinions provided by the State agency physicians in a summary fashion without addressing any of the factors set forth above. Given these errors, it is clear to the undersigned that the ALJ did not follow the requirements of 20 C.F.R. §§ 404.1527 and 417.927 when assigning weigh to these opinions.

Plaintiff takes issue with the ALJ's statement that Dr. Klein's treatment notes indicate that she was "progressively getting better." (R. at 65.) The undersigned's review of the record reveals that at no time did Dr. Klein state that Plaintiff was "progressively getting better." On October 12, 2011, Dr. Klein diagnosed Plaintiff with major depressive disorder, severe, recurrent. (R. at 362.) On November 15, 2011, Dr. Klein noted that Plaintiff has made "[m]inimal progress." (R. at 363.) That record is the one cited to by the ALJ to find that Plaintiff was "progressively getting better." The undersigned cannot find that a notation that Plaintiff had made "minimal progress" equals a determination that Plaintiff was "progressively getting better." Indeed, on that same date, Dr. Klein noted that he had made an additional diagnosis of generalized anxiety disorder. (Id.) The undersigned believes that no additional diagnoses would be made if an individual were in fact "progressively getting better." Indeed, on December 6, 2011, Dr. Klein noted that Plaintiff continued to have "excessive crying episodes and her legs, thighs and upper body show increasing tremors." (R. at 382.) Likewise, on December 20, 2011, Dr. Klein diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychosis; generalized anxiety disorder; and conversion disorder. (R. at 408.) Given this, the undersigned concludes that the ALJ mischaracterized the record by finding that Dr. Klein's notes indicated that Plaintiff was "progressively getting better."

The ALJ also discounted Dr. Klein's opinion for the following reason:

> In December 2011, Dr. Klein reported a setback in the claimant's progress to Dr. Orvik due to the claimant's disability denial and her financial concerns. This indicates that the claimant's increased anxiety and depressive symptoms were situational, rather than a significant longitudinal problem (Exhibit 6F).

(R. at 65.) However, the undersigned's review of that exhibit reveals that Dr. Klein never described Plaintiff's condition as a "setback." While the undersigned agrees that Plaintiff had a "major panic

24

attack" after receiving a letter rejecting her disability application, Dr. Klein also noted that since November 2, 2011, Plaintiff had been seen on a weekly basis and continued to have "excessive crying episodes and her legs, thighs and upper body show increasing tremors." Plaintiff also continued to "experience panic when she leaves the home leading her to be fearful of leaving the home." (R. at 382.) Nevertheless, the ALJ ignored that part of Dr. Klein's letter to Dr. Orvik. Furthermore, the ALJ's statement that "the claimant's increased anxiety and depressive symptoms were situational, rather than a significant longitudinal problem" is contradicted by the ALJ's finding that Plaintiff suffered from the severe impairments of anxiety and depression. (R. at 54.)

The ALJ also noted that Dr. Klein's opinion was not consistent with his treatment notes because such notes "do not report psychosis, poor concentration, more than mild deficiencies in social functioning or problems leaving the home due to psychological reasons." Again, the undersigned's review of the record shows that this statement is not supported by substantial evidence. On October 12, 2011, Dr. Klein noted that Plaintiff's concentration was "fair to good." (R. at 362.) On November 15, 2011, he found that Plaintiff's concentration was mildly deficient. (R. at 365.) As noted above, on December 6, 2011, Dr. Klein stated, in his letter to Dr. Orvik, that Plaintiff continued to "experience panic when she leaves the home leading her to be fearful of leaving her home." (R. at 382.) On December 20, 2011, Dr. Klein found that Plaintiff's concentration was mildly deficient (R. at 406), and that she demonstrated "social avoidance" (R. at 408). While the ALJ is correct that Dr. Klein's notes never report psychosis, the notes still support portions of Dr. Klein's opinion.

Given these findings, the undersigned cannot conclude that substantial evidence supports the ALJ's assignment of weight to Dr. Klein's opinion. While portions of Dr. Klein's treatment

notes do contradict his opinion, it is clear that many of the reasons the ALJ provides for discounting his opinion are either mischaracterizations of the evidence or contradicted by the record. Furthermore, at no point did the ALJ address any of the other factors set forth above when considering Dr. Klein's opinion.

Even where a treating physician's opinions are not entitled to controlling weight, they are generally entitled to more weight than the opinion of a consultative physician. See 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). As noted above, as to Ms. Caruso-Radin's opinion, the ALJ stated:

> Likewise, the undersigned finds that July 2012 determination by Phaedra Caruso-Radin, Psy.D., was consistent with the claimant's activities of daily living and her mental status. Although the evaluator did not physically examine the claimant, all the evidence of record was reviewed to make a determination that the claimant had the capacity to understand, remember and carry out a two-step command involving simple instructions and maintain concentration, persistence and pace in an LPC/NPC environment (Exhibit 11F).

(R. at 66.) As an initial matter, the ALJ never assigned explicit weight to this opinion. Furthermore, given that the ALJ erred by failing to assign weight to Ms. Posey's opinion and sufficiently explain the weight to the opinions provided by Dr. Klein, Dr. Goudy, and the State agency mental consultants, the undersigned concludes that it follows that substantial evidence does not support the ALJ's reliance on Ms. Caruso-Radio's opinion when formulating Plaintiff's RFC.

While it is the exclusive province of the ALJ to weigh the evidence contained in the record, the ALJ's findings cannot withstand judicial review when the ALJ fails to articulate his reasoning or substantiate his findings. See DeLoatch, 715 F.2d at 150; Miller v. Astrue, No. 1:12-cv-37, 2013 WL 588722, at *48-49 (N.D. W. Va. Jan. 16, 2013), aff'd by 2013 WL 557277 (N.D. W. Va. Feb. 13, 2013) (remanding case because "the ALJ's discussion of the treating physician's opinions [did] not comply with the regulations or rulings regarding treating physician opinions"); Trimmer, 2011

WL 4589998, at *6 (remanding case because ALJ failed to sufficiently articulate findings and provide substantial evidence for rejecting the opinion of a treating physician). In sum, the undersigned first finds that the ALJ completely failed to assign weight to the November 8, 2011, consultative report prepared by Ms. Posey. The undersigned further finds that the ALJ failed to sufficiently articulate the weight and the reasons for such weight assigned to the opinions of Dr. Klein, Dr. Goudy, Dr. Lilly, Dr. Cloonan, and Ms. Caruso-Radin. Accordingly, the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.[2]

**D.    Credibility**

As part of her second claim for relief, Plaintiff argues that the ALJ erred in his credibility analysis by utilizing his "own personal beliefs" to discount her credibility. (Plaintiff's Brief at 11.) The undersigned has already found that the ALJ failed to sufficiently articulate the weight and the reasons for such weight assigned to the medical source opinions contained in the record. With that finding, the undersigned declines to consider Plaintiff's arguments regarding the ALJ's credibility determination.

## V.  RECOMMENDATION

For the reasons herein stated, I find substantial evidence does not support the Commissioner's decision denying the Plaintiff's applications for DIB, SSI, and WIB. I accordingly recommend Defendant's Motion for Summary Judgment be **DENIED**, and the Plaintiff's Motion for Summary Judgment be **GRANTED** and this action be **REMANDED** to the Commissioner for

---

[2] The undersigned has previously recommended remand on the basis that this same ALJ failed to sufficiently  articulate the weight and the reasons for such weight assigned to medical opinions included in the record. Chandler v. Comm'r of Soc. Sec., No. 3:14CV19, 2014 WL 2998597 (N.D. W. Va. June 11, 2014), aff'd by 2014 WL 2993733 (N.D. W. Va. July 1, 2014).

further action in accordance with this Report and Recommendation.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 5 day of November, 2014.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE